IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| NOLAN CRAIG MARTIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SGT. HERMAN PITTMAN; )<br>SGT. JEFFERY MILES; CHIEF TINA )<br>GUZMAN a/k/a CHIEF HODGES; )<br>UNIT MANAGER MR. POWL a/k/a )<br>INVESTIGATOR POWL; and )<br>LT. NEKESHA HOWARD, )<br>)<br>Defendants. ) | CV 322-088 |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at GEO-Riverbend in Milledgeville, Georgia, filed this case pursuant to 42 U.S.C. § 1983 regarding events taking place at Wheeler Correctional Facility ("WCF") in Alamo, Georgia. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.   SCREENING THE AMENDED COMPLAINT**

Plaintiff names Defendants: (1) Sgt. Herman Pittman, WCF Senior Officer; (2) Sgt. Jeffrey Miles, WCF Senior Officer; (3) Tina Guzman a/k/a Chief Hodges, WCF Chief of Unit Management; (4) WCF Unit Manager Powl, a/k/a Investigator Powl; and (5) Lt. Nekesha

Howard, WCF Shift Supervisor. (Doc. no. 51, p. 1-7.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff was a high-ranking gang member while in prison. (Id. at 8.) On July 16, 2021, Plaintiff consumed a drug that made him stop breathing, but was saved by his roommate because no officers were present. (Id.) In turn, Plaintiff started helping out other inmates, which resulted in him being assaulted multiple times by other gang members. (Id.) Plaintiff informed staff, but they did nothing. (Id.) He emailed the American Psychological Association and the Georgia Department of Corrections regarding these incidents. (Id.)

On November 3, 2021, Plaintiff agreed to transport a package of drugs across the prison for other inmates in exchange for Plaintiff's lost phone and money. (See id.) Plaintiff was allowed passage by officers to pick up the package but was stopped by Defendants Pittman and Miles on the way back. (Id.) Plaintiff alleges he was set up. (Id.) Defendant Pittman brought Plaintiff to a room for Captain Fazier to question him; Defendants Pittman, Miles, Howard were among others present. (Id.) Defendants mocked and threatened Plaintiff, but Plaintiff said if he was to be charged, so should the officers who allowed him to smuggle drugs. (Id.)

Plaintiff identified Defendant Howard as one of those officers, and Lt. Blue began calling him names. (Id.) In fact, Defendant Howard's cousin has a child with a formerly incarcerated gang member and dated another gang member at WCF to whom Defendant Howard would feed information. (Id. at 10.) When Plaintiff asked if he could simply be written up and sent to the hole, Defendants refused. (Id. at 8.) Plaintiff cautioned "Bloods will think I stole their drugs . . . ." (Id.) Defendants laughed and said if he gets in a fight "wait

2

until next shift so they don't have to do paperwork." (Id.) That night, Plaintiff was assaulted and extorted by four Blood gang members. (Id.)

Around February 2022, Plaintiff witnessed a gang member stab another inmate for money while no officers were around. (Id.) Another time, Officers Gills and Wilson took Plaintiff to the hole for refusing housing. (Id.) Plaintiff remained in the hole for several weeks and received threats from gang members throughout. (Id.) Plaintiff generally alleges all Defendants "knew [he] was at risk of harm, not once did they respond reasonably." (Id. at 9.) Plaintiff filed more than ten grievances at WCF during the three months he spent in the hole in 2022. (Id.) In response, staff refused or ignored his grievances, or found his complaints were not grievable. (Id.)

Plaintiff was eventually interviewed by Defendants Tina Guzman and Investigator Powl regarding an unidentified incident, during which Defendant Guzman insisted Plaintiff give them his Facebook and Gmail login information to see videos and pictures he had stored. (Id. at 8-9.) Defendant Guzman told Plaintiff that he needed to fully cooperate and provide information on the incident, to which Plaintiff replied doing so would "make me public enemy #1." (Id. at 9.) When Defendants told Plaintiff they would protect him if he provided them with information, Plaintiff gave Defendants a plethora of information regarding prison gang activities, including information on gang members, corrupt officers, the locations of drugs and cellphones, and information on many other incidents at WCF. (Id.) The next day, Defendants gathered the contraband, returned the items belonging to Plaintiff, and, as a reward, secretly provided Plaintiff three or four bags of food. (Id.)

However, soon others in the prison learned he was an informant. (Id.) Plaintiff received threats from gang members, but Defendants Guzman and Powl "left [Plaintiff] for dead" and

left Plaintiff's grievances regarding threats "hanging" on his cell door for weeks. (Id.) Defendants Guzman and Powl and other staff would call Plaintiff names. (Id.) Blood gang members told staff that if they let Plaintiff "back on compound [he's] dead." (Id.) While in the hole, Plaintiff was given two razorblades through his door flap by an unknown person, found sharp objects in his food, and on some days was not given any food at all. (Id.) Plaintiff also suffers a skin condition that left his skin dried and bleeding, but medical staff refused to help him because he did not submit medical forms or grievances. (Id.)

On April 18, 2022, Plaintiff made a threat to cut himself with one of the razorblades he was given unless he was allowed to call his family and received medical attention. (Id. at 10.) Defendant Howard agreed to these conditions if Plaintiff gave her the razorblade. (Id.) Plaintiff gave Defendant Howard one razorblade but held on to the second razorblade without Defendant Howard's knowledge. (Id.) Plaintiff made a brief phone call to his cousin before being stripped down and taken to receive medical attention from a counselor. (Id.) Plaintiff was taken back to the hole and left naked with the air conditioning turned up. (Id.) While this exacerbated Plaintiff's skin condition, he received no additional medical attention until the third shift when officers gave him a mat and food. (Id.)

The next day—April 19, 2022—a mental health counselor threatened to take away the mat and Plaintiff's food. (Id.) Plaintiff demanded he be allowed to speak to outside authorities. (Id.) Plaintiff pulled out the razorblade and said "[I]'d either die by my own hand, or medical will come here and save me. Either way I'll get help from outside." (Id.) Soon, Defendants Pittman, Howard, and Miles arrived at Plaintiff's cell. (Id.) Plaintiff was naked and threatened to cut his own wrist and throat if he did not receive outside help. (Id.) Defendant Pittman told Plaintiff to open the cell door's tray flap and asked for Plaintiff's trash, and Plaintiff complied.

4

(Id. at 10-11.) Defendant Pittman then said "f*** this he's talking too much" and pepper sprayed Plaintiff through the cell door without warning while Plaintiff held the razor to his own throat. (Id. at 11.) Plaintiff then cut his own wrist and upper left arm thinking that this would stop Defendant Pittman's pepper spraying, but Defendant Pittman continued. (Id.) Plaintiff threw the razorblade away, Defendant Pittman stopped and tightly handcuffed Plaintiff, still naked. (Id.)

While handcuffed and naked, Plaintiff was paraded around in front of other staff members. (Id. at 11, 14.) Plaintiff begged to be rinsed off in a shower, but this plea was initially ignored. (Id. at 11.) Plaintiff was instead taken to see a doctor to address his cuts. (Id.) When Plaintiff said he did not want to be touched, Defendant Miles twisted Plaintiff's arm around twice to show the doctor Plaintiff's cuts; Plaintiff screamed in pain. (Id. at 11.) The doctor said, "It is just a scratch[,] let me put some glue on it," and Plaintiff begged for water. (Id.) While being rinsed off, Defendant Pittman whispered into Plaintiff's ear, "Just remember you did this to yourself." (Id.) Plaintiff turned around to confront Defendant Pittman, but Defendant Miles again painfully twisted Plaintiff's arm and wrist to restrain him. Defendant Howard filmed the entire encounter and suggested they tell her cousin Plaintiff attempted suicide. (Id. at 10-11.)

Plaintiff was brought back to his cell soaking wet while the air conditioning was turned up. (Id. at 12). Plaintiff was still bleeding and could feel the pepper spray in both open cuts in his left arm. (Id.) Plaintiff was left in this state from around 8:50 a.m. until 10:00 p.m., when he was transported to Augusta State Medical Prison ("ASMP"). Before Plaintiff was moved to ASMP, Defendant Howard threatened Plaintiff "[you'll] be back" and "don't get too comfortable, this is only temporary." (Id.) Plaintiff suffers pain and nerve damage in his wrist

5

from the April 19th incident, as well as injuries from multiple assaults from gang members. (Id. at 14.) Plaintiff also has an improperly set jaw and cracked teeth because of assaults from inmates and suffers from depression and psychological damage. (Id.)

After receiving treatment at ASMP, Plaintiff was moved to Baldwin State Prison, Johnson State Prison, Smith State Prison, and Riverbend Correctional Facility. (Id. at 3, 13.) Plaintiff claims that several doctors at different facilities have told him there is no record of Plaintiff cutting himself. (Id. at 12.) Plaintiff attempted suicide again at Smith State Prison and Johnson State Prison and has had similar experiences to WCF elsewhere. (See id. at 13.)

### B. DISCUSSION

#### 1. Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That

is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. An amended complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

The court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the court has a duty to re-write the amended complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff's Claims Regarding Events Other Than the April 19th Incident Are Improperly Joined Under Rule 20

Plaintiff cannot bring unrelated claims in a single lawsuit under Fed. R. Civ. P. 20. There are two requirements for joinder under Rule 20: (1) all claims against joined defendants must arise out of "the same transaction or occurrence, or series of transactions or occurrences"; and (2) "there must be some question of law or fact common to all defendants that will arise in the action." Smith v. Trans-Siberian Orchestra, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing Alexander v. Fulton County, Ga., 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by* Manders v. Lee, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003) (*en banc*)). "In

7

determining what constitutes a transaction or occurrence for the purposes of Rule 20(a), courts have looked for meaning to Fed. R. Civ. P. 13(a) governing compulsory counterclaims." Alexander, 207 F.3d at 1323.  Under the requirements of Rule 13(a), "a claim arises out of the same transaction or occurrence if there is a logical relationship between the claims." Construction Aggregates, Ltd. v. Forest Commodities Corp., 147 F.3d 1334, 1337 n.6 (11th Cir. 1998); Tarver v. Owens, 5:14-CV-214, 2014 WL 3810594, at *4 (M.D. Ga. Aug. 1, 2014) (same).  A logical relationship exists when the claims depend upon the same set of facts, or the facts of one claim "activate additional legal rights supporting the other claim."  Smith, 728 F. Supp. 2d at 1319.  A claim may be dismissed without prejudice where it does not comply with Rule 20.  Smith v. Owens, 625 F. App'x 924, 928-29 (11th Cir. 2015).

Plaintiff's amended complaint is an amalgamation of several unrelated experiences at WCF across eight months.  He discusses taking drugs, violence and assaults by gang members, a November 2021 drug bust, grievances being ignored, Defendant Howard's family, confidential informants, pepper spraying, and medical care.  The Court has already found Plaintiff's original complaint stated a claim for excessive force and deliberate indifference to serious medical needs in relation to the events of April 19, 2022.  (See doc. no. 16.)   Plaintiff's additional claims against all Defendants regarding gang activity and Defendants' failure to protect him from violence within the prison, regardless of merit, bear no logical relationship to the claims already in this case regarding the April 19th use of force and Plaintiff's resultant medical treatment.  See Skillern v. Georgia Dep't of Corr. Com'r, 379 F. App'x 859, 860 (11th Cir. 2010) (affirming dismissal under Rule 20 where prisoner simply "claimed that many different transactions and occurrences were related because they showed the defendants' overall indifference to his medical conditions").

8

Only Defendants Pittman, Howard, and Miles were present during the events of April 19th. Plaintiff's claims against Defendants Guzman and Powl, rather, only concern investigations into gang activity and their failure to protect Plaintiff from violence. Using the discretion afforded the Court by Fed. R. Civ. P. 21, the Court recommends dismissal of Defendants Guzman and Powl for improper joinder. See Daker v. Head, 730 F. App'x 765, 768 (11th Cir. 2018) ("[T]he proper remedy is for the district court to dismiss those defendants or sever the plaintiff's claims against them."). This case shall only continue on Plaintiff's April 19th use of force and medical care allegations against Defendants Pittman, Howard, and Miles. All other claims and Defendants contained in the amended complaint are improperly joined. Should Plaintiff wish to pursue these unrelated claims, he should file a separate civil rights complaint after fully exhausting his administrative remedies.

### 3. Plaintiff's Official Capacity Monetary Claims

Plaintiff states he is suing Defendants Pittman, Howard, Miles, Guzman, and Powl in their official capacities. (Doc. no. 51, pp. 3-5.) However, the Eleventh Amendment bars official capacity claims against state officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against Defendants for monetary relief fail as a matter of law.

### 4. Defendant Pittman's Motions to Dismiss.

Also before the Court are Defendant Pittman's motion to dismiss and supplemental motion to dismiss the original complaint for failure to exhaust administrative remedies. (Doc. nos. 28, 37.) Because the Court is directing service of the amended complaint, the original complaint is no longer the operative pleading. See Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007) ("an amended complaint supersedes the initial complaint and becomes

9

the operative pleading in the case"). "An amended complaint that does not incorporate the prior pleading, however, moots 'the motion to dismiss the original complaint because the motion seeks to dismiss a pleading that has been superseded.'" Auto-Owners Ins. Co. v. Tabby Place Homeowners Ass'n, Inc., No. 4:21-CV-346, 2022 WL 4542114, at *2 (S.D. Ga. Sept. 28, 2022) (quoting Wimberly v. Broome, No. 6:15-cv-23, 2016 WL 3264346, at *1 (S.D. Ga. Mar. 29, 2016)). Accordingly, Defendant Pittman's motions should be denied as moot and without prejudice. Defendant Pittman may file a new motion to dismiss reasserting his exhaustion arguments in light of the amended complaint.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants Guzman and Powl be **DISMISSED WITHOUT PREJUDICE** for improper joinder, Plaintiff's official capacity monetary damages claims against all Defendants be **DISMISSED** for failure to state a claim, and Defendant Pittman's motions to dismiss the original complaint be **DENIED WITHOUT PREJUDICE AS MOOT**, (doc. nos. 28, 37). By separate Order, the Court directs service of process on Defendants Pittman, Howard, and Miles based on Plaintiff's allegations of use of excessive force and deliberate indifference to serious medical needs.

SO REPORTED AND RECOMMENDED this 13th day of July, 2023, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA