IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

NOLAN CRAIG MARTIN,                    *
                                       *
        Plaintiff,                     *
                                       *
    v.                                 *       CV  322-088
                                       *
SGT. HERMAN PITTMAN; SGT.              *
JEFFERY MILES; and LT. NEKESHA         *
HOWARD,                                *
                                       *
        Defendants.                    *

_____

O R D E R

_____

On August 5, 2022, Plaintiff Nolan Craig Martin, an inmate of
the Georgia Department of Corrections, filed this civil rights
action *pro se* under 42 U.S.C. § 1983 pertaining to his conditions
of confinement at Wheeler Correctional Facility ("Wheeler").  Of
the three remaining captioned defendants, only Sgt. Herman Pittman
was named in the original complaint.  Plaintiff was granted *in
forma pauperis* status, and his original complaint was screened
under the standards of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).
As a result, the Court determined that Plaintiff had stated a
viable Eighth Amendment claim for excessive force and deliberate
indifference to a serious medical need against Sgt. Pittman.
Thereafter, Sgt. Pittman waived service and filed a motion to

dismiss based upon Plaintiff's alleged failure to exhaust administrative remedies.

While the motion to dismiss was pending, Plaintiff sought leave to file an amended complaint on May 26, 2023. The amended and operative complaint in the case was filed on June 12, 2023, and was immediately screened. While Plaintiff added four individual defendants from Wheeler to the case, the Court dismissed defendants and claims unrelated to the events of April 19, 2022, the day upon which Sgt. Pittman had allegedly used excessive force and been deliberately indifferent. Thereupon, the only claims that remain are claims of excessive force and deliberate indifference against three Wheeler correctional officers: Sgt. Pittman, Sgt. Jeffery Miles, and Lt. Nekesha Howard. The Court dismissed as moot the pending motion to dismiss for failure to exhaust administrative remedies and ordered service of the amended complaint.

Defendants have now filed a renewed motion to dismiss based upon Plaintiff's failure to exhaust administrative remedies. While the motion has been pending, Attorney Amith Gupta entered a Notice of Appearance on behalf of Plaintiff.[1]   Subsequently,

---

[1] The Court then extended Plaintiff's response time to the motion to dismiss three times to ensure Attorney Gupta had ample time for case study and adequate representation. Attorney Gupta's appearance in the case is commendable and has been helpful to the Court.

Plaintiff filed a counseled response in opposition to the motion to dismiss.  Defendants have filed a reply brief.  The motion to dismiss for failure to exhaust administrative remedies is now ripe for consideration.

## I.    FACTUAL ALLEGATIONS OF THE AMENDED COMPLAINT

The Court will now summarize the relevant factual allegations of the amended complaint.  Plaintiff alleges that he was a former "high ranking gang member."  (Am. Compl., Doc. No. 51, ¶ 1.) Because he knew things, he became a threat and was assaulted several times.  (Id. ¶ 2.)  Ultimately, Plaintiff met with prison officials and, in exchange for protection, revealed to them the hiding spots for contraband and the names of persons, including prison guards, involved in various illegal activities.  (Id. ¶¶ 6-8.)  Other gang members learned about Plaintiff's involvement and made threats.  (Id. ¶ 9.)  Plaintiff was left in the "hole," which is presumably isolated from the general population.   There, Plaintiff was "forgotten"; he sometimes did not receive food and was refused medical treatment for a skin condition.  (Id. ¶ 10.) At some point, someone slipped two razors through the flap of his cell door.  (Id.)  Plaintiff alleges that he filed more than 10 grievances pertaining to the threats he was receiving and the

neglect of the staff in the three-month period he was locked in the hole.  (Id. ¶ 11.)

On April 18, 2022, Plaintiff threatened to cut himself unless he was allowed to call his family and received medical attention. (Id. ¶ 13.)  Lt. Howard agreed to these conditions if Plaintiff surrendered his razor.  Plaintiff gave one razor to Lt. Howard, but retained the other unbeknownst to Lt. Howard. (Id.)  Plaintiff briefly called his cousin, but he did not receive medical attention.  Instead, he was placed in "new medical," stripped of his clothes, and only fed one sandwich until third shift.  (Id. ¶ 14.)

On April 19, 2022, the mental health counselor threatened to take away Plaintiff's mat and food and told Plaintiff he would have to "stay back" a few more days.  (Id. ¶ 15.)  Plaintiff demanded to speak with someone outside of the prison.  (Id.) Plaintiff produced the second razor and threatened to harm himself, stating he would either die by his own hand or medical personnel would save him – either way, he would get outside help.  (Id.)

Defendants Pittman, Miles and Howard responded to this situation.  Plaintiff was naked and threatened to cut his wrist and throat if he did not get help from someone outside of Wheeler. (Id. ¶ 16.)  Sgt. Pittman sprayed pepper spray into Plaintiff's cell without warning.  (Id. ¶ 17.)  According to Plaintiff, Sgt.

4

Pittman continued to spray into his face, so Plaintiff cut himself on his wrist and his upper arm to stop the spraying.  (Id. ¶ 18.) Plaintiff alleges that Sgt. Pittman "still did not stop so I figured he was pushing me to cut my throat, I gave up."  (Id.) Plaintiff next alleges that Sgt. Pittman handcuffed him despite the injury to his wrist and that the handcuffs were "extremely tight."  (Id. ¶ 19.)  He also explains that he was removed from the cell and not allowed to put on any clothes.  (Id.)

Plaintiff was first taken to medical instead of the shower to rinse off.  While in medical, Sgt. Miles twisted his arm while he was in handcuffs to show the nurse his wrist wound.  (Id. ¶ 20.) The nurse said it was a scratch and offered to put glue on it; Plaintiff refused.  (Id.)  While Plaintiff was being rinsed off, Sgt. Miles twisted his arm again when Plaintiff turned to confront Sgt. Pittman, who had whispered "You did this to yourself" in Plaintiff's ear.  (Id.)

Plaintiff, who was soaking wet, was returned to his cell, which still had pepper spray in it.  (Id. ¶ 21.)  The staff blew a fan into his cell door flap even though he had a skin condition. (Id.)  Plaintiff was bleeding and humiliated.  (Id.)  Plaintiff complains that the pepper spray burned the various open wounds from his skin condition.  (Id. ¶ 22.)   Plaintiff was left in indescribable pain from 8:50 a.m. to 10:00 p.m.  (Id.)

Lt. Howard then transported Plaintiff to ASMP ("Augusta State Medical Prison") for treatment.  Before departing, Lt. Howard made a subtle threat that Plaintiff would be back to Wheeler.  (Id. ¶ 23.)

Once Plaintiff was at ASMP, he filed a grievance on April 28, 2022.[2]  (Am. Compl., Ex. A.)  He stated therein: "I've came (sic) from a camp where I've suffered abuse on so many levels. . . . I'm with all respect begging to speak with any investigator as well as asking for someone to guarantee me my safety by not returning me to Wheeler Corr."  (Id.)  Plaintiff's grievance was denied by the warden on May 18, 2022, and by an investigator on June 7, 2022.  (Id.)  Plaintiff did not file any administrative appeal.

Since his discharge from ASMP, Plaintiff has been transferred to many different correctional facilities, but he has not returned to Wheeler.  Plaintiff filed this lawsuit on August 5, 2022, while he was housed at Johnson State Prison in Wrightsville, Georgia.  The only claim remaining in the case is Plaintiff's Eighth Amendment claim for excessive force and deliberate indifference to a serious medical need against Defendants Pittman, Howard and Miles for the April 19, 2022 incident.

---

[2] Plaintiff explained in a *pro se* filing that he was unable to file a grievance earlier because he was not permitted to access any sharp objects, including a pen to write his grievance.  (See Doc. No. 39.)

## II.  LEGAL STANDARD ON MOTION TO DISMISS

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are available are exhausted.  42 U.S.C. § 1997e(a). Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008). Accordingly, where a prison's grievance policy contains multiple steps, including appeals, a prisoner must "properly take each step within the administrative process" before filing suit.  Id.  The purpose of exhausting administrative remedies is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1208 (11th Cir. 2015) (quoted source omitted).  Thus, proper exhaustion requires an inmate to "provide as much relevant information as he reasonably can in the administrative grievance process." See Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000).

A district court should apply a two-step process in resolving motions to dismiss based upon a claim of failure to exhaust administrative remedies.  Turner v. Burnside, 541 F.3d 1077, 1082

7

(11th Cir. 2008).  First, the Court looks to the factual allegations made by the parties, taking the prisoner's version as true where there is a conflict, and determined if the complaint is subject to dismissal.  Id.  "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  Id.  Second, if the complaint is not subject to dismissal at this point, then the court must "make specific findings in order to resolve the disputed factual issues related to exhaustion."  Id.  Once the Court makes findings on the disputed issues of fact, it then decides whether the plaintiff has failed to exhaust administrative remedies.  Id. at 1082-83.  "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies."  Id. at 1082.

### III. LEGAL ANALYSIS

There is a Statewide Grievance Procedure applicable to inmates of the Georgia Department of Corrections.  In particular, Standard Operating Procedure Policy Number 227.02 provides that an inmate must file a grievance no later than 10 days from the date he knew, or should have known, of the facts giving rise to the grievance.  (See Suppl. Decl. of Lajuanna Johnson, Doc. No. 59-1, Attachment A.)  If the grievance is not accepted, the inmate has 7 days to file a Central Office Appeal.  (Id.)

8

In the instant case, the only grievance filed by Plaintiff within 10 days of the April 19, 2022 incident is Grievance Number 338421, filed from ASMP on April 28, 2022. While the Grievance was filed within 10 days of the incident, it provides no relevant information about the incident. It does not mention any of the Defendants by name, it does not relay any of the factual allegations contained in the amended complaint, and it does not suggest that he was subjected to excessive force and deliberate indifference of a serious medical need on April 19, 2022 at Wheeler. Instead, Grievance Number 338421 contains a general allegation of abuse ("I've c[o]me from a camp where I've suffered abuse on so many levels.") and a vague expression of concern for his safety ("I'm with all respect begging to speak with any investigator as well as asking for someone to guarantee me my safety by not returning me to Wheeler Corr."). This Grievance fails to put the Wheeler prison officials on notice to allow them to address Plaintiff's issues prior to filing suit. Adding to Plaintiff's exhaustion problem is the fact that he did not file a Central Office Appeal upon the rejection of this Grievance.

On the face of the amended complaint, Plaintiff's failure to exhaust administrative remedies is evident. Acknowledging this fact, Plaintiff responds that he was too intimidated and afraid of retaliation from Wheeler prison officials to be more specific in

his Grievance.  Thus, he argues that the administrative grievance process was unavailable to him.  He points to the treatment he received from Wheeler prison officials after he became an informant as evidence that the threat of retaliation was very real.  He notes that his Grievance mentions that he required outside help.  Indeed, it states: "It is important that I speak with someone who can help, my life is on the line for further info I want to share without being intimidated for doing so."  Plaintiff points out that at the time of filing Grievance Number 338421, he was facing imminent return to Wheeler.

It is true that exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." Ross v. Blake, 578 U.S. 632, 644 (2016).  However, the alleged mistreatment Plaintiff received at Wheeler was in response to Plaintiff becoming an informant, not in response to his filing of grievances.  In fact, in the three weeks prior to the April 19, 2022 incident, Plaintiff had filed four grievances about the conditions of his confinement at Wheeler.  He was not deterred, intimidated, or fearful then.  Moreover, as soon as he was able to secure a pen at ASMP, he filed the subject Grievance. Relative to his state of mind, however, is Plaintiff's insistence throughout this litigation that he has filed many more grievances

than what the Georgia Department of Corrections has acknowledged. In his amended complaint, he alleges that he filed more than 10 grievances pertaining to the threats he was receiving and the neglect of the staff in the three-month period he was locked in the hole at Wheeler.  (Id. ¶ 11.)  In his pro se response to the first motion to dismiss, he contends that as soon as it was determined that he was not suicidal at ASMP, and thus allowed to have a pen, he "filed *more* grievances along with witness statements" and that he has not stopped. (Doc. No. 39, at 2; Am. Compl. at 16 ("At ASMP not only did I file 3 sepret (sic) grievances I also filled out wittness (sic) stat[e]ments (full detail) and one appeal while there . . . .").)  There is no mention of Plaintiff's fear or intimidation in this response.  In short, this is not the mindset of a person who felt too intimidated to file a grievance, then or now.

Plaintiff filed five more grievances in the year after the incident.  Grievance Number 342228, filed on July 26, 2022 while Plaintiff was housed at Johnson State Prison, mentions the April 19, 2022 incident, but only in passing.  In a rambling, stream-of-consciousness type of complaint, Plaintiff states:

> I've faced dejection.  I've been degraded, humiliated, stripped naked, sprayed with high-powered pepper spray, left in a room with no mat with the thermostat turned low, extremely low, soak[ed] and wet surrounded by my own blood from a split wrist caused from a razor blad[e] given to my in my distress.

(Doc. No. 59-3 (cleaned up).)    Yet again he does not mention Wheeler or any Wheeler prison official by name, even though he had not returned to Wheeler.    Instead, he continues the impermissible pattern of putting more than one issue or incident into a single grievance.    In short, Plaintiff's grievance history demonstrates that he has not been intimidated from using it, he just does so incorrectly.

Importantly, Plaintiff's claimed fear of retaliation from Wheeler prison officials is not relevant to his failure to file an appeal.    The timely Grievance, Grievance Number 338421, was rejected on May 18, 2022.    At that time, Plaintiff had been transferred from ASMP to Baldwin State Prison.    Thus, any fear of retaliation or intimidation from Wheeler officials had been allayed.    Yet, Plaintiff did not appeal the rejection of this Grievance, and he has offered no excuse for failing to complete the process of an administrative review.

In conclusion, Plaintiff's conclusory claim of fear of retaliation falls short of establishing that the administrative grievance process was unavailable to him.    Accordingly, Plaintiff's complaint must be dismissed for failure to exhaust administrative remedies.

12

Case 3:22-cv-00088-DHB-BKE   Document 80   Filed 01/03/24   Page 13 of 13

IV.   CONCLUSION

Upon the foregoing, Defendants' motion to dismiss for failure to exhaust administrative remedies (doc. no. 59) is **GRANTED.**  The Clerk is directed to **CLOSE** this case and **ENTER JUDGMENT** against Plaintiff.

**ORDER ENTERED** at Augusta, Georgia, this _3rd_ day of January, 2024.

_____
UNITED STATES DISTRICT JUDGE

13